Staples, J.,
delivered the opinion of the court.
This case was before this court at the April term 1870. A decision was then made construing' the will of Mrs. Mary W. Cabell, and settling the rights of her legatees and distributees. That was a controversy between legatees and next of kin. This is a controversy between the next of kin and the executor of Mrs. Cabell. It grows out of collections made by the executor in the years 1862, 1863 and 1864 of certain debts in confederate currency; and out of the alleged mismanagement by him, and consequent loss of a claim due the estate against the Howardsville Bank.
Upon the first point the defence of the executor is of ■a two-fold character. He insists that “ his transactions *765 in confederate funds ” were recognized as valid by the decrees of the circuit court of Eelson pronounced in 1867 and 1868; and these decrees in this particular were affirmed by this court in its decree of April 1870; and the propriety of these collections is therefore no longer an open question. Second, if this ground is untenable, it is claimed that the collections were made in good faith, in the exercise of a large discretion vested in the executor by the will, and.were fully justified by the circumstances surrounding him at the time. In the view we take it is only necessary now to examine the first ground of defence relied upon by the executor.
"Whatever may have been done in the circuit court, it is very certain that in this court the executorial transactions were examined only so far as they were necessary to a settlement of the conflicting claims of the legatees and next of kin under the will of Mrs. Cabell. The opinion delivered by Judge Joynes, in which all the judges concurred, plainly shows this. It commences with the declaration that the bill was filed by the executor of Mrs. Cabell against her legatees and distributees, for the purpose of obtaining the advice and direction of the court in his administration of the estate; and especially in respect to the construction and effect of certain provisions of the will and codicils of the testatrix. It then proceeds to discuss and decide the various questions arising upon these provisions. Upon three of the points involved the decrees of the eii’cuit court were reversed, and upon the other five they were affirmed. In no part of the opinion is any reference made to the collection of the debts now the subject of controversy, or indeed to the conduct of the executor in the administration of the assets, any fur *766 ther than it affected or was connected with the questions at issue between the next of kin and the legatees.
Mrs. Cabell had left a very large personal estate, and a very numerous kindred, widely dispersed throughout the country. Many of the provisions of her will presented serious difficulties in respect to a proper construction; and these difficulties were greatly increased by the disastrous results of the war. In the very protracted controversy before this court, conducted by counsel of great ability, a controversy involving points of a novel and perplexing character, it is not surprising that both counsel and the court lost sight of the executor and of every question affecting his liability. Indeed until the rights of the respective claimants under the will were adjudicated, until it was ascertained who was entitled to that portion of the estate passing under the residuary clause, there was no one especially interested to engage in a controversy with the executor respecting his administration of the assets. That the executor did not consider himself particularly interested in the decision, is shown by the fact that he was not even represented by counsel before this court.
It appears that the executor in the years 1862, 1868 and 1864, had collected in confederate currency a very large amount of debts due the estate, which it is alleged were secured by liens upon real estate. It is not intended here even to intimate that he was guilty of a devastavit in making these collections. But it is incredible that the counsel would have submitted without argument, and this court have decided without •considering and without ever assigning a reason therefor, questions of so much importance and difficulty as -arise out of the transactions of the executor with reference to these debts. It may be assumed therefore, *767 with absolute confidence, that the court did not pass, and did not intend to pass, upon any question affecting the executor’s liability in this particular.
It is impossible to look into the record as it was before the circuit court without a very strong impression that the question of the executor’s liability, as it is now presented, received but little attention in that court. As has been seen, the bill was filed by the executor himself. Its main object was to obtain the direction of the court touching the distribution of the estate under the will. The answers of the defendants are almost exclusively devoted to that subject, and the testimony taken is given the same direction. It appears that the commissioner in settling the executor’s accounts with the estate charges him with the debts collected in the year 1862, 1868 and 1864, and finds against him a large balance as of the 1st February 1866. There is no allusion in this account to confederate currency, nor is any credit claimed or allowed upon that ground. There was nothing in this account calling for any exception on the part of the next of kin. The first reference made by the commissioner to the confederate collections and investments by the executor is in a statement of the executorial accounts with the residuary legatee and “the unknown representatives of Mrs. Cabell.” To these statements exceptions were filed by the next of kin, which, in the main, were overruled by the court. The court said, “ that to the extent to which the executor proceeded to administer the estate in confederate funds, his transactions in these funds are to be recognized as valid.” This does not very clearly indicate whether the court intended to sustain the executor in every respect in the -collections made by him, or only to affirm the validity ■of his transactions in confederate funds, so far as they *768 applied to payments made to legatees and next of kin. The whole manner of taking the accounts, and all the circumstances, lead to the conclusion that -tatter supposition is probably the correct one. At the time the decrees of 1867 and 1868 were rendered, perplexing questions growing out of the conduct 0f fiduciaries during the war had received but little attention from the courts in Virginia. The condition of the country then, under military domination, was far from favorable to the deliberate investigation of such questions. This condition of things had not materially changed down to the hearing of the cause before this-court at the April term 1870. It is not surprising therefore, in view of all the circumstances, that the question of the executor’s liability to the next of kin received so little consideration from this court and the circuit court.
The decree of this court affirmed the decrees of the circuit court in every particular except so far as they were expressly reversed, on the three grounds mentioned. blow if, as is contended here, the decrees of the circuit court recognized the validity of the executor’s transactions in confederate collections, this court by its decree of affirmance was placed in the attitude of having adjudicated questions of the greatest importance which it had not even considered; questions involving the interests of a party not even before the court by counsel; questions which ought properly to have been postponed until the main subject of controversy was finally disposed of.
It is very probable that the attention of the court was at the time called to the language of its decree, and its injurious effect upon the rights of the parties. And therefore it was this important reservation was inserted: “ On motion of the counsel of C. C. Lee and *769 others, next of kin of Mary W. Cabell, dee’d, it is ordered that nothing in this decree shall prevent the next of kin or any other party interested, from ing by proper proceedings, any claim they may be advised to assert against D. J. Hartsook, executor of Mary W. Cabell, on account of his transactions as such executor.” Can there be a reasonable doubt as to the purpose of the court in making this reservation. In view of all the circumstances mentioned, can there be a question as to the propriety and justice of some such provision.
It is very true that this court having decided all the questions between the legatees and next of kin, might have gone on to decide those between the next of kin and the executor. One objection to this course was, that the cause was not then in a condition for such a decision. Ho direct and proper issue had been raised upon these points; nor did the record contain sufficient material for their safe adjudication. If the court had been called on to pass upon the executor’s conduct with reference to the debts in question, there is but little doubt it would have remanded the cause for further inquiry—as was done in Corbin and Mills the preceding year—or it would have required the parties complaining to proceed by cross-bill against the executor according to the present disposition of the case.
It has been said, and that is the view of the circuit court, that the true intent and meaning of the provision is, that the executorial accounts may be reopened only as to such matters as were not raised at the previous hearings, or passed upon by the decrees of the circuit court and the court of appeals. If this is the only value of the reservation it was useless and unnecessary. Without such provision it is competent for the parties to assert their claims against the execu *770 tor on account of any matter not adjudicated by the court. The language employed does not admit of any qualification. If there is any limitation as to the °^arac*er °f the claim which may be asserted against the executor, it is not found in the reservation itself, it must be looked for elsewhere.
Accordingly it is argued that the decrees of 1867 and 1868 being neither affirmed nor reversed as to the executor, necessarily remain in full force as to him; and as the decree of 1868 is final, it can only be impeached by bill of review. If this be so, it is obvious that the reservation practically amounts to nothing. As there is no error on the face of the decree, and no pretence of after discovered evidence, there is, of course, no ground for a bill of review. This court might as well have affirmed the decrees of the circuit court without qualification. The result is precisely the same. This court, in entering the reservation, must have supposed there was spme proceeding by which the parties could assert their claim against the executor, and must have intended they might resort to that proceeding if they had any just cause of complaint against the executor. The court renders such decree as the court below ought to have rendered, and the reservation must have precisely the same effect before the court. It seems to me the purposes of justice will be as well if not better subserved by a cross-bill, to be filed by the next of kin against the executor. In conformity with this view, so much of the decree of the circuit court as overrules the twelfth exception of the next of kin to commissioner Stephen’s report must be reversed, and the cause remanded, with instructions that leave be given the parties interested, and they be required to file a cross-bill against the executor, touching the matters set forth in the said twelfth exception.
*771 It only remains to consider the question of the executor’s liability for the amount of the claim against the Howardsville bank. The circuit court was of that no liability attaches to him on that account. In . . this opinion we think the circuit court is unquestionably correct. It appears that as early as August 1863 the executor called the attention of the court below to this claim. One of the defendants also referred to it in his answer, and asked the court to make such decree in relation thereto as might be equitable and just. The matter being thus placed under the direct supervision of the court, it was entirely competent for either of the parties to make application to the court for any order touching the safety of the fund. Complaint is made that the executor did not correctly state the facts in his amended bill, facts with which he must have been perfectly familiar as an officer of the bank.
It is very true that he represented Mrs. Cabell’s interest as being state stock; and there is no doubt he honestly believed it to be such. Very able counsel held the same opinion. One of the parties vigorously maintained that view, through all the stages of the controversy, and the question was never regarded as finally •settled until the decision of this court in April 1870.
Even had the court below been placed in possession of all the facts, down to the minutest details, there is every reason to believe it would have taken no action in the matter. With the single exception of an order made in 1863, authorizing the executor to invest confederate currency in his hands, nothing was done in the cause, from the filing of the amended bill in 1863, until after the close of the war. This court cannot close its eyes to the fact, that from the beginning of the year 1863, to the termination of hostilities, the courts, even when in session, transacted but little busi *772 ness. Every part of the state was exposed to sudden incursions of the enemy. Counsel and suitors were in the army, or connected in some way with the public serv^ce* H ever there was a period in the history of mankind when the maxim “ leges silent inter arma” applied, it was to the eventful years of 1863 and 1864 in the state of Virginia.
Does any one suppose that if the executor had called upon the court at such a crisis to adjudicate the character of this claim it would have done so, leaving all other questions in the cause undecided. If the circuit court had complied with the request, it is certain that neither of the parties would have acquiesced in the decision until affirmed by a court of the last resort.
The learned counsel for the appellants contends that a bill ought to have been filed by the executor against the bank for a specific execution of the contract to deliver the stock. Surely the learned counsel does not forget that this court has already decided that Mrs. Cabell’s contract with the bank was nothing more than a loan of money, with a special agreement as to the manner in which the loan should be repaid; and for breach of this contract the remedy was in damages. And so the circuit court also held. It would seem therefore perfectly clear that in neither court would a bill for the stock have been maintained. This would seem to be so upon general principles, as compensation may be obtained in damages at law for a breach of contract to deliver stock.
¥e are told, however, that the executor was not only a leading stockholder but a cashier of the bank, and therefore in a position to exercise strong influence with the authorities of the bank: that he ought to have exerted this influence, to induce them.to redeem the stock from the state, or to go into the market and *773 purchase other stock in its place, or at least to secure the money in some safe way. This is the burden of the argument on the part of the appellants, in the exceptions taken in the circuit court, and reiterated in the petition and the printed briefs of counsel.
There is not the slightest ground for believing that the bank would have made any arrangement of the kind. The executor states that the bank did not have and could not control the means either for redeeming or purchasing the stock: First, for the reason that nothing but countersigned notes of the bank could be used to withdraw the state stock from the treasury. The bank did not have and could not get the countersigned notes, as holders of these notes would not pay them in except for coin; and that the bank did. not have, except a small sum: and besides, specie payments had been suspended. Second, in consequence of the stay law the debtors of the bank would not pay their notes, and could not be forced to do so. The •correctness of this statement has not been impugned by any one. It effectually disposes of the theory so persistently urged, that the executor, if he had made the effort, could have induced the bank to furnish the stock for the benefit of the estate.
But rejecting this evidence as incompetent, we may think the executor might have succeeded with the bank; still it is a mere matter of conjecture. Surely he cannot be held guilty of a devastavit upon a mere conjecture as to the weight of his influence as an officer of the bank. To hold a fiduciary responsible, upon •a mere supposition of what he might have done by the ■exercise of his official and personal influence at a particular juncture, is to embark in a field of the wildest speculation.
The injustice of such a pretension is the more mani *774 fest when it is remembered we are asked to hold the-executor liable for not inducing the bank to do what court has held the bank was under no obligation to
In many cases a fiduciary incurs liability in respect of losses by his failure to call in money of the testator already invested. And it has been held he ought not, without great reason, to permit funds to remain upon mere personal security longer than is absolutely necessary. But these rules are based upon the idea that the fiduciary may sue and may enforce collection by process of law. They have but little application to a time' of war and invasion, such as prevailed here in 1863- and 1864, when trials by jury in civil cases were suspended, the collection of debts by process of law prohibited, and payments, if made at all, only made in a depreciated currency. The most that can be said is, that the executor ought to obtain the lien of a judgment when there is real estate of the debtor. But in this ease the bank owned no real estate, and a judgment if obtained would have been wholly unavailing. Possibly the executor might have obtained payment in confederate money; but it will scarce be now contended that this would have been advantageous to the estate. The present controversy is an indignant complaint of collections in that currency, which have proved entirely worthless to the parties interested.
Upon the whole, we are of opinion that upon neither or any of the grounds suggested is the executor chargeable with the debt against the Howardsville bank. The decree of the circuit court in this particular is plainly right, and must be affirmed.
The decree was as follows:
*775 This day came again the parties by counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court did not err in holding that Daniel J. Hartsook, the executor of Mrs. Mary W. Cabell, dec’d, ought not to be charged with the sum of thirty-four thousand and six hundred dollars, or any part of it, on account of the claim against the Howardsville Bank, and the said decree of the 7th of September 1872, is in this respect affirmed.
The court is further of opinion that C. C. Lee and otliers, next of kin of Mrs. Mary W. Cabell, dec’d, are not concluded by the several decrees of the circuit court pronounced on the 11th of October 1867, and of May 8th, 1868, or by the decree of this court, from asserting any claim they may be advised to assert against said Daniel J. Hartsook on account of his transactions as executor as aforesaid; and the said circuit court therefore erred in overruling upon the ground stated, the twelfth exception taken by C. C. Lee and others to the report of commissioner Stevens.
It is therefore decreed and ordered that the decree of the 25th day of March, 1872, be, and the same is hereby reversed and annulled so far as the same is herein declared to be erroneous, and that it be affirmed in all other respects; and that the appellee Daniel J. Hartsook do pay to the appellants their costs by them expended in the prosecution of their appeal here. And it is further decreed and ordered that this cause be remanded to the said circuit court for further proceedings to be had therein in conformity with the foregoing opinion and decree, and with instructions that leave be given to the appellants and others the next of *776 kin of Mary W. Cabell, or any of them, and that they be required to file their cross-bill against the said Daniel J. Hartsook, touching the matters set forth in the said twelfth exception.
Which is ordered to be certified to the said circuit court of Nelson county.
Decree reversed.